IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01694-PAB-MEH

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL #111,
DOMINGO N. MORENO,
DAVID L. WILLIAMS,
GUY E. FORTI,
GERALD E. KING, and
VICKI WILLIAMS,

        Plaintiffs,

v.

PUBLIC SERVICE COMPANY OF COLORADO and
XCEL ENERGY INC. EMPLOYEE WELFARE BENEFIT PLAN,

        Defendants.

---

**ORDER**

---

This matter is before the Court on the Partial Motion to Dismiss Plaintiffs' First

Amended Class Action Complaint [Docket No. 83] pursuant to Fed. R. Civ. P. 12(b)(1)

and 12(b)(6) filed by defendants Public Service Company of Colorado ("PSCo") and

Xcel Energy Inc. Employee Welfare Benefit Plan.  The Court has jurisdiction pursuant

to 28 U.S.C. § 1331 and 29 U.S.C. §§ 185(a), 1132(e)-(f).

**I. BACKGROUND**[1]

This case concerns changes to the prescription drug benefits provided by the

---

[1]The following facts are drawn from plaintiffs' First Amended Class Action
Complaint, Docket No. 73, and are assumed to be true for the purposes of this order.
*See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

Xcel Energy Inc. Employee Welfare Benefit Plan (the "Plan"), which is governed by the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.  See* Docket No. 73 at 4, ¶ 14.   Plaintiffs allege that defendants made certain changes to retirees' prescription drug benefits in violation of the Plan and the governing collective bargaining agreement ("CBA") between plaintiff International Brotherhood of Electrical Workers, Local # 111 ("IBEW") and PSCo.  *See generally* Docket No. 73.  Plaintiffs Moreno, Forti, King, David Williams, and Vicki Williams (the "Class Representatives") are former PSCo employees and participants in the Public Service Company and Participating Subsidiary Companies Retirees' Medical Managed Care/Medicare Coordinated Plan (the "M/M plan"), a component of the Plan.  Docket No. 73 at 3-4, ¶¶ 8-12.  The Class Representatives assert claims under ERISA to "preserve and recover" health benefits due and to "clarify and enforce rights" under the Plan. *Id.* at 2, ¶ 4.

### A. Historical Medical Benefits for PSCo Employees and Retirees

#### 1. The PSCo Collective Bargaining Agreement

Before June 1987, PSCo paid all of the premium costs for medical benefits for both retirees and active employees. *Id.* at 4, ¶ 16.  In a CBA effective December 1, 1986, IBEW and PSCo agreed to implement a premium cost sharing formula for active bargaining unit employees beginning June 1987. *Id.*  The 1986 CBA did not address premium costs or plans available to PSCo's then-current or future retirees. *Id.* at 4-5, ¶ 17.  Individuals who were retired as of December 1, 1986 participated in the same plan that was available to active employees. *Id.*  Before June 1989, medical benefits

were provided to retirees and active employees through a number of plans including

Blue Cross/Blue Shield, various Health Maintenance Organization Plans, and a plan

called Mutual Aid that operated in conjunction with Blue Cross/Blue Shield coverage.

*Id.* at 4, ¶ 15.

In 1989, PSCo proposed a self-funded managed care medical plan that would

cover both bargaining unit and non-bargaining unit active employees ("the 1989 plan").

Docket No. 73 at 5, ¶ 18.  The 1989 plan provided that "[n]etwork pharmacies will

dispense prescription drugs for $5/up to 90 day supply."  *Id.* ¶ 21; *see also* Docket No.

73-4 at 11.  In connection with the 1989 plan, PSCo and IBEW agreed to defer

negotiations over a new managed care plan for retirees.  Docket No. 73 at 5-6, ¶ 22.

Pursuant to this agreement, PSCo and IBEW entered into a Letter of Agreement that

offered employees who retired between January 1 and December 31, 1990 the option

of retiring either with the Mutual Aid, Blue Cross/Blue Shield benefits or with retiree

health care benefits that would be negotiated as part of the 1989 general negotiations.

*Id.*  Under the letter of agreement, PSCo remained responsible for 100% of the

premium cost of retiree medical benefits.  *Id.* at 6, ¶ 23.

Between September 1989 and July 1990, PSCo and IBEW negotiated a

successor to the 1986 CBA.  *See* Docket No. 73 at 6-7, ¶¶ 25, 27.  The result of this

negotiation was reflected in the 1989-1992 CBA and a Letter of Understanding, which

states: "Future retirees under age 65 and eligible dependents under age 65 will, upon

retirement, have the same medical plan as active employees. . . .  Future plan changes

in the Managed Care plan for active employees will also be reflected in the retiree plan

3

for individuals under age 65." *Id.* at 7, ¶ 27; Docket No. 73-10 at 1-2.  Under the 1989-1992 CBA, retirees and active employees were entitled to receive prescription medication at a cost of $5 for a 90-day supply.  Docket No. 73 at 7-8, ¶ 28; Docket No. 73-12 at 8.  Since the 1989-1992 CBA, the premium cost to retirees and their dependents, including the cost of prescription drug copayments, has been fixed in terms of dollar amount on the date of retirement.  Docket No. 73 at 8, ¶ 29.

During negotiations over a successor to the 1989-1992 CBA, PSCo proposed an increase in premium cost-sharing for active employees.  *Id.* at 8, ¶ 32.  With respect to retiree healthcare benefits, the 1992-1995 CBA states: "[f]or the term of this Agreement. . . .  Retirees and future retirees and their dependents [sic] monthly premium amount will be based on the same percentage and in the same manner as was agreed to in the 1989 negotiations." *Id.* at 9, ¶ 35; Docket No. 73-17 at 3, Art. 11, § 3(a).  The CBA established a new premium cost-sharing schedule for active employees that would gradually increase the employee contribution for health benefits up to 20% by 1998, but did not alter the benefits contribution paid by then-current or then-future retirees.  Docket No. 73 at 9, ¶ 35.  There were no relevant changes in retiree health benefits between 1995 and 2003.  *Id.* at 10, ¶¶ 39-41.

The 2003-2006 CBA implemented a new premium cost-sharing schedule for future retirees.  *Id.* ¶ 41; Docket No. 73-21 at 3, Art. 11, § 3(d).  The 2003-2006 CBA also added the following language to the section on medical insurance: "[f]uture plan changes in the Managed Health Care Plan will also be reflected in the retiree plan for individuals under age 65.  These changes do not affect the medical coverage of retirees with Medical plans other than [the M/M plan]." Docket No. 73 at 10, ¶ 41; Docket No.

4

73-21 at 2-3 Art. 11, § 3(a).

The 2006-2009 CBA, finalized pursuant to an arbitration award, authorized an increase in prescription drug copayments for active employees that, pursuant to the CBA, was then echoed in the M/M plan for new retirees.  Docket No. 73 at 11-12, ¶ 46.  As of the effective date of the 2006-2009 CBA, the prescription drug copayment remained at $5 per prescription for active employees and non-Medicare eligible participants who retired before 2007, and increased to $10 per prescription for non-Medicare eligible participants who retired in 2007, and to $15 per prescription for non-Medicare eligible participants who retired in or after 2008.  *Id.*  Subsequent CBAs were executed for the periods 2006-2009 and 2009-2014, which made no material changes to retiree health benefits.  *Id.* at 11, ¶ *45; see* Docket Nos. 73-22 at 3-4, 73-23 at 4-5.

### 2.  *The M/M Plan*

The plan document for the M/M plan was executed on January 4, 1993 and was subsequently amended six times between October 8, 1993 and September 27, 1996.  Docket No. 73 at 8, ¶ 31.  In 1995, the M/M plan released a Summary Plan Description, which provided for the same prescription drug coverage as the then-active employees' managed care plan.  *Id.* at 9-10, ¶¶ 37-38.

In 2000, the M/M plan was incorporated into a "wrap" plan by New Century Energies, Inc., PSCo's former parent company.  *Id.* at 10, ¶ 42.  After the formation of Xcel Energy, the Plan replaced this wrap plan.  *Id.* at 10-11, ¶ 42.  Coverage under the M/M plan component of the Plan remained as set forth in the 1993 M/M plan document, the 1995 Summary Plan Description, and the relevant CBAs.  *Id.* at 11, ¶ 43.  All

relevant versions of the Plan documents provided that defendants reserved the right, in their sole discretion, to "amend or terminate any such benefit program at any time, in any manner, and for any reason," subject to "any limitations imposed by an applicable collective bargaining agreement[.]"  *Id.* at 11, ¶ 44.

### B.  Alleged Increases in Prescription Drug Benefits

#### 1.  *2011 Increase in Retiree Co-Payments*

In October 2011, PSCo announced changes in prescription drug co-payments that would apply to current and future retirees, but not to active employees.  Docket No. 73 at 13, ¶ 52.  The October 2011 changes to prescription drug copayments increased retirees' prescription drug copayments by between $5 and $25 per prescription, depending on whether the prescription was for a generic or brand name drug and whether it was purchased retail or by mail order.  Docket No. 73-28 at 1.

#### 2.  *Members Pay the Difference Program*

On or about January 1, 2006, defendants implemented a "Members Pay the Difference" ("MPD") program under which M/M plan participants might pay the difference in cost between generic and name-brand prescription medication.[2]  Docket No. 73 at 12, ¶ 47.  MPD was not set forth in any plan amendment, plan document, Summary Plan Description, Summary of Material Modification, or any instrument under which the Plan is established or operated, nor was there any amendment to the M/M

---

[2]Although plaintiffs do not specifically allege that MPD applied only to retirees, it appears from various allegations that this is the case.  *See* Docket No. 73 at 12, ¶¶ 48 (alleging that no amendments to the M/M plan were made to establish MPD); 50 (noting that an employee filed a grievance related to MPD "in anticipation of his own retirement").

plan made to establish MPD.  *Id.* ¶ 48.

On or about March 31, 2010, IBEW filed a grievance on behalf of employee Curtis Vandeventer and all affected employees (the "Vandeventer Grievance").  Docket No. 73 at 12, ¶ 50.  The Vandeventer Grievance was "addressed to the description of MPD in a document received by Mr. Vandeventer in anticipation of his own retirement." *Id.*  In response to the Vandeventer Grievance, PSCo represented that, "[i]f the retiree's medical provider requires the retiree to use a specific formulary [name-brand] prescription then it is covered by the plan.  If the retiree still wants a formulary drug and a non-formulary is available then the retiree can still obtain the drug however they [sic] will pay the difference between formulary and non-formulary."  *Id.* at 12-13, ¶ 51 (alteration marks in original, plaintiffs' emphasis removed).  Based on PSCo's representation, IBEW withdrew the grievance.  *Id.*

In February 2013, plaintiffs first became aware that defendants assert retirees under MPD must pay the difference between a generic and name-brand medication even where a prescribing physician prescribes a name-brand drug and specifies that the prescription must be "Dispense[d] as Written."  Docket No. 73 at 13, ¶ 53. According to plaintiffs, if the MPD operates as defendants assert, it violates the 2009-2014 CBA.  Docket No. 73 at 13, ¶ 54.  Moreover, plaintiffs allege that the MPD, "however it is operated," is not authorized under the Plan.  *Id.* ¶ 55.

## C.  Procedural History

On October 13, 2011, IBEW brought a grievance against PSCo, alleging that PSCo breached the CBA by unilaterally increasing prescription drug co-payments for

retirees without making a corresponding change to the healthcare plan for active employees.  Docket No. 73 at 14, ¶ 59.  PSCo argued that the dispute was not subject to the CBA's grievance and arbitration procedure.  *Id*.  On April 20, 2012, IBEW made a formal demand on PSCo to submit the matter to arbitration.  *Id.* ¶ 62.  PSCo responded that, although the matter was substantively arbitrable as to persons actively employed by PSCo, any claim on behalf of such individuals may not have been ripe for adjudication.  *Id.* ¶ 63; Docket No. 73-33 at 1.

On June 28, 2012, plaintiffs initiated this action pursuant to the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to compel arbitration.  Docket No. 1 at 16-17, ¶¶ 60-65.  In the alternative, IBEW sought judicial resolution of its claim that PSCo breached the 2009-2014 CBA in violation of the LMRA.  Docket No. 1 at 17, ¶¶ 66-69.  In addition, the Class Representatives asserted claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to preserve and recover health benefits and to enforce rights under an employee welfare benefit plan.  Docket No. 1 at 2, ¶ 4, and 18, ¶¶ 70-71; 29 U.S.C. §§ 1132(a)(1)(B), (a)(3).

On May 2, 2013, the Court denied plaintiffs' Motion for Judgment on the Pleadings and on First Claim for Relief, and Motion to Stay Proceedings Pending Arbitration.  Docket No. 40 (denying Docket No. 20).  The Court held that, under the 2009-2014 CBA, the parties did not agree to arbitrate the healthcare benefits of retirees who retired under past CBAs.  *See id.* at 15-16.

On May 9, 2013, IBEW filed an interlocutory appeal of the Court's May 2, 2013 order.  Docket No. 41.  On May 22, 2013, the Court stayed proceedings in this case

8

pending the Tenth Circuit Court of Appeals' issuance of a mandate in connection with IBEW's appeal.  Docket No. 50.  On December 9, 2014, the Tenth Circuit affirmed the Court's May 2, 2013 Order.  *Int'l Brotherhood of Elec. Workers, Local # 111 v. Pub. Serv. Co. of Colo.*, 773 F.3d 1100 (10th Cir. 2014) ("*IBEW*").  Pursuant to the resulting mandate, the Court lifted the stay in this case on February 11, 2015.  Docket No. 57.

On May 1, 2015, plaintiffs moved to amend their complaint to allege additional facts about MPD.  *See generally* Docket No. 62.  As grounds for the proposed amendment, plaintiffs stated that they learned through discovery that PSCo had taken inconsistent positions with respect to whether MPD applies when a physician specifies a name-brand medication and requires the prescription to be dispensed as written.  *See id.* at 4, ¶¶ 6-7.  Magistrate Judge Michael Hegarty granted plaintiffs' motion in part and allowed plaintiffs to file an amended complaint that alleges facts concerning MPD.  Docket No. 72.[3]

Defendants move to dismiss plaintiffs' claims related to MPD and to defendants' alleged failure to comply with plan amendment procedures when increasing prescription drug co-pay changes in 2012.[4]  Defendants argue that these claims are barred by the

---

[3]Plaintiffs' motion also sought to add allegations regarding a 2013 Summary Plan Description, *see* Docket No. 62 at 15, which was denied.  Docket No. 72 at 8.  Those allegations are not relevant to the instant motion.

[4]While defendants characterize these as "new claims," plaintiffs' only truly "new" claim is their third claim, which alleges that MPD violates the LMRA.  *Compare* Docket No. 73 *with* Docket No. 1.  Defendants characterize plaintiffs' amended complaint as containing two new ERISA claims relating to MPD and defendants' failure to follow amendment procedures in implementing the 2012 price increase.  Docket No. 83 at 2. Plaintiffs dispute the characterization of these claims and state that the amended complaint "simply clarifies the scope of the original Complaint."  Docket No. 97 at 1. Indeed, in both the original and amended complaint, plaintiffs allege only a single

statute of limitations and do not relate back to the original complaint. *See generally*

Docket No. 83. Defendants further argue that plaintiffs are judicially estopped from

asserting that the original complaint contemplated claims based on MPD or failure to

amend the Plan, that IBEW waived its CBA claim related to MPD, and that plaintiffs

lack standing to pursue their MPD and improper amendment claims because they do

not present an actual case or controversy. *See id.*

## II.  STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(1)

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if

the Court lacks subject matter jurisdiction over the claim for relief asserted in the

complaint. "The burden of establishing subject matter jurisdiction is on the party

asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189

(10th Cir. 2008). Rule 12(b)(1) challenges are generally presented in one of two forms:

"[t]he moving party may (1) facially attack the complaint's allegations as to the existence

of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by

presenting evidence to challenge the factual basis upon which subject matter

jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074

(10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)); *see*

*Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). To the extent a defendant

---

ERISA claim, and the allegations of that claim are identical. *Compare* Docket No. 1 at
18, ¶¶ 70-71, *with* Docket No. 73 at 19-20, ¶¶ 82-83. Thus, with respect to plaintiffs'
ERISA claim (which defendants characterize as encompassing at least three claims –
the two purportedly new claims as well as plaintiffs' original claim), defendants' motion
is directed to just that portion that relies on plaintiffs' new allegations.

attacks the factual basis for subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Finance SA v. La Plata Cty.*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances." *Id.*

### B.  Federal Rule of Civil Procedure 12(b)(6)

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim.  Fed. R. Civ. P. 12(b)(6); *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted).  In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado*, 493 F.3d at 1215 (quotation marks and citation omitted).  At the same time, however, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

To survive a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled

to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 (quoting *Twombly*, 550 U.S. at 570) ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss."). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiffs have not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted).

## III. ANALYSIS

### A.  Standing

The Court first takes up the threshold issue of whether plaintiffs have standing to assert claims based on the new allegations in the amended complaint. To demonstrate standing, plaintiffs must meet three elements:

> First, [plaintiffs] must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations, quotations, and alterations omitted).

Defendants argue that plaintiffs have alleged no injury or harm because the

allegations of the amended complaint are conditional.[5]  Defendants point to paragraph 54 of the amended complaint, in which plaintiffs allege that "[t]he MPD program, *if* it does not incorporate an exception for 'Dispense as Written' prescriptions, represents a violation of the 2009-2014 collective bargaining agreement."  Docket No. 101 at 11 (quoting Docket No. 73 at 13, ¶ 54) (emphasis by defendants).  Defendants further argue that, if MPD does not apply even to "dispense as written" prescriptions, plaintiffs have conceded that MPD violates neither the CBA nor the Plan.  *Id.* (citing Docket No. 62 at 9, n.7).  Plaintiffs argue that ERISA allows the Court to interpret and enforce participants' rights under the Plan and that neither an ERISA nor a CBA claim requires proof of monetary loss to satisfy Article III's injury in fact requirement.  Docket No. 97 at 2, n. 1.

Plaintiffs' allegation is not as uncertain or conditional as defendants suggest. Although defendants correctly point out that paragraph 54 of the amended complaint alleges that MPD violates the CBA only "*if*" MPD does not except "dispense as written" prescriptions, plaintiffs allege that defendants themselves have adopted this interpretation of MPD.  *See* Docket No. 73 at 13, ¶ 53 ("On or about February 6, 2013, plaintiffs first became aware that the defendants now assert that the MPD additional cost is assessed even on prescriptions for which the prescribing physician has specified 'Dispense as Written'").  As defendants are the sponsor of the Plan, *id.* at 4, ¶¶ 13-14,

---

[5]Defendants' standing argument challenges the sufficiency of plaintiffs' allegations and does not introduce evidence beyond the pleadings; thus, it is a facial attack.  "In addressing a facial attack, the . . . [C]ourt must accept the allegations in the complaint as true."  *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001).

plaintiffs' allegation that defendants interpret MPD in a manner that violates the Plan and the CBA is sufficient to confer standing.[6]

Defendants argue in their reply that plaintiffs do not allege any denial of benefit or imminent harm, but only "the existence of an administrative procedure – which no one alleges to be overly burdensome or futile[.]"  Docket No. 101 at 11.  It is not clear what burdensomeness or futility has to do with standing.  Moreover, defendants' reference to an administrative procedure cites plaintiffs' motion for leave to amend, where plaintiffs stated that, "[i]f the Plan had adhered to a 'Dispense as Written' exception to MPD, plaintiffs were prepared to concede that this was a valid administrative rule, permissible both under the contract and under the Plan, and not a substantive change in benefits."  Docket No. 62 at 9 n.7.  The amended complaint itself, to which the Court and the parties are limited with respect to this motion, contains no reference to any administrative procedure related to MPD.  As a result, the Court cannot, on this record, consider defendants' argument that MPD is merely an

---

[6]Defendants argue that plaintiffs lack standing by virtue of their failure to identify any member that has suffered harm as a result of defendants' interpretation of MPD. Docket No. 83 at 14.  In their reply, defendants attempt to clarify that their standing argument relates only to the conditional nature of plaintiffs' allegations concerning MPD and plaintiffs' resulting failure to allege imminent harm to any of the named plaintiffs. *See* Docket No. 101 at 10-11.  Defendants' position remains somewhat unclear.  To the extent that defendants argue that plaintiffs are required to allege that MPD has caused a "denied benefit or other substantive harm," *id.* at 11, the Court disagrees.  Plaintiffs satisfy Article III's injury in fact requirement by alleging a failure to provide promised benefits, even if no substantive harm has yet occurred.  *See Kerns v. Caterpillar, Inc.*, 499 F. Supp. 2d 1005, 1024-25 (M.D. Tenn. 2007) (ERISA beneficiaries who brought suit to "clarify their rights to future benefits under the plan and to challenge [] benefit modifications" satisfied Article III's standing requirements where defendant had not yet imposed announced benefit modifications on plaintiffs but reserved its right to do so).

administrative process that is not overly burdensome.

### B.  Statute of Limitations

#### 1.  MPD

Defendants argue that plaintiffs' so-called "new claims," insofar as they relate to plaintiffs' allegations concerning MPD, are barred by the applicable statute of limitations because MPD was implemented in January 2006.  Docket No. 83 at 4-7.  Although a statute of limitations bar is an affirmative defense, questions regarding the statute of limitations may be resolved under Rule 12(b)(6) when it is clear from the face of the complaint that the right sued upon has been extinguished.  *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); *see also Jackson v. Standifird*, 463 F. App'x 736, 737 (10th Cir. 2012) ("Dismissal of a claim as time-barred is treated as a dismissal for failure to state a claim").

Because Section 301 of the LMRA and Section 502 of ERISA provide no statute of limitations, "courts generally infer Congress intended the most closely analogous state statute of limitations to apply." *Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1050 (10th Cir. 1995) (citing *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 147 (1987)).  Defendants assert, and plaintiffs do not dispute, that the relevant statute of limitations is Colo. Rev. Stat. § 13-80-101, Colorado's three-year limit on claims for breach of contract.  Docket No. 83 at 3.  The Court agrees and will apply a three-year statute of limitations.  *See Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am. (UAW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705 n.7 (1966) (where a "suit is essentially an

action for damages caused by an alleged breach [of] a collective bargaining agreement.

. . . [s]uch an action closely resembles an action for breach of contract cognizable at

common law"); *see also Held v. Mfrs. Hanover Leasing Corp.*, 912 F. 2d 1197, 1207

(10th Cir. 1990) ("cases typically hold that an ERISA action for benefits is analogous to

a state-law action upon a contract"); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134,

147 (1985) (referring to ERISA plan benefits as "contractually authorized benefits").

Although the Court looks to Colorado's three-year statute of limitations, the

question of when plaintiffs' claims accrued is a matter of federal common law.  *See Int'l*

*Ass'n of Bridge, Structural and Ornamental Iron Workers, Shopmen's Local Union 501*

*v. Burtman Iron Works, Inc.*, 928 F. Supp. 83, 86 (D. Mass. 1996) (applying federal

common law to determine when a Section 301 action accrues); *Dameron v. Sinai Hosp.*

*of Baltimore, Inc.*, 595 F. Supp. 1404, 1412 (D. Md. 1984) ("Although an analogous

state statute of limitations establishes the time period within which suit must be brought,

federal law controls when the federal cause of action accrues").  Accordingly, the

limitations period begins to run on plaintiffs' second and third claims for breach of the

CBA when plaintiffs "[knew] or in the exercise of reasonable diligence should have

known or discovered the acts" constituting the alleged CBA violation.  *Lucas v.*

*Mountain States Telephone & Telegraph*, 909 F.2d 419, 420-21 (10th Cir. 1990).  The

limitations period begins to run on the ERISA claim when "there has been a repudiation

by the fiduciary which is clear and made known to the beneficiary." *Abdel v. U.S.*

*Bancorp*, 457 F.3d 877, 880 (8th Cir. 2006).  A formal denial of benefits is not required

for an ERISA claim to accrue so long as the repudiation of benefits is clear and has

16

been made known to the beneficiary.  *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 521 (3d Cir. 2007).

Defendants argue that all claims related to MPD are time-barred because the amended complaint makes clear that defendants implemented MPD in 2006.  Docket No. 83 at 4 (citing Docket No. 73 at 12, ¶ 47).  Alternatively, defendants argue that IBEW could have discovered MPD's mechanics no later than 2010 when pursuing the Vandeventer Grievance.  *Id.* at 5.  Plaintiffs respond that their claims relating to MPD accrued in February 2013, when defendants took the position that MPD reduces benefits even for "dispense as written" prescriptions.  Docket No. 97 at 8.  Plaintiffs also argue that, based on defendants' representations in response to the Vandeventer Grievance, defendants either adopted this interpretation of MPD after 2010 or actively concealed it in response to the Vandeventer Grievance.  *Id.*  Defendants reply that plaintiffs admit knowledge of MPD and that IBEW does not allege that it ever asked for details about MPD's procedural mechanics.  Docket No. 101 at 3.

The Court finds that, to the extent plaintiffs' claims are premised on MPD's application to "dispense as written" prescriptions, those claims accrued in February 2013.  Although plaintiffs allege that MPD was implemented on or about January 1, 2006, plaintiffs' claims concern the manner in which defendants apply MPD, which plaintiffs allege was unknown to them until February 6, 2013.  Docket No. 73 at 13, ¶ 53.  Further, plaintiffs allege that, in responding to the Vandeventer Grievance, PSCo represented that MPD would not apply "[i]f the retiree's medical provider requires the retiree to use a specific formulary [name-brand] prescription[.]"  *Id.* at 12-13, ¶ 51.  This

description of MPD appears to contradict defendants' alleged position as of February

2013 that MPD applies even to "dispense as written" prescriptions.  Although IBEW has

not described in detail any other efforts to learn the mechanics of MPD since its 2006

implementation, it is not clear from the face of the complaint that reasonable diligence

would have revealed defendants' position concerning MPD.  As plaintiffs argue, it is

plausible from the allegations of the complaint that defendants' interpretation of MPD

changed between March 2010 and February 2013.[7]  Thus, the Court cannot conclude

that IBEW's claim for breach of the CBA related to MPD is barred by any failure to

exercise reasonable diligence.

Although the parties do not discuss it specifically in their briefing, plaintiffs'

ERISA claim appears to encompass a claim that MPD constituted a violation of the

Plan whether or not it applies to "dispense as written" prescriptions.  Specifically,

plaintiffs allege that "[t]he MPD program, however it is operated, is not authorized under

the Plan."  Docket No. 73 at 13, ¶ 55.  In their response, plaintiffs appear to abandon

this theory, focusing instead on their February 2013 discovery concerning "dispense as

written" prescriptions.  *See generally* Docket No. 97 at 7-9.  To the extent that plaintiffs

allege that MPD itself, even if it does not reduce payments for "dispense as written"

prescriptions, violates ERISA, the Court finds that this aspect of plaintiffs' ERISA claim

is time-barred.  Plaintiffs acknowledge that MPD was implemented in 2006.  Docket No.

_____

[7]According to the amended complaint, IBEW filed the Vandeventer Grievance on or about March 31, 2010.  Docket No. 73 at 12, ¶ 50.  Plaintiffs do not provide the date of PSCo's representations about MPD in response to that grievance.  *See id.* at 12-13, ¶ 51.

73 at 12, ¶ 47.  Plaintiffs further allege that MPD's existence was communicated to at least one affected employee, Mr. Vandeventer, in anticipation of his retirement.  *Id.* ¶ 50.  The amended complaint alleges no facts from which the Court can infer that the Class Representatives could not, with reasonable diligence, have learned about MPD within three years of its implementation.  Because MPD was implemented on January 1, 2006, any claim that is not based on the alleged February 2013 discovery concerning MPD's implementation was time-barred as of January 1, 2009.  Thus, the Class Representatives' ERISA claim will be dismissed to the extent that plaintiffs allege that MPD itself violates the Plan even if retirees are not required to pay more for "dispense as written" prescriptions.

In sum, the Court finds that the claims related to MPD's policy on "dispense as written" prescriptions accrued in February 2013, when defendants informed plaintiffs for the first time that MPD operates in a manner inconsistent with defendants' representation in connection with the Vandeventer Grievance.  The Court, therefore, does not address whether such claims relate back to the original complaint.  Similarly, the Court need not address relation back with respect to plaintiffs' claim that MPD, "however it is operated," is not authorized under the Plan.  Docket No. 73 at 13, ¶ 55. This claim accrued on or about January 1, 2006, when MPD was first implemented, *see id.* at 12, ¶ 47, and was thus time-barred as of January 2009, long before plaintiffs filed their original complaint in this lawsuit.  Finally, because plaintiffs' claims, with the lone exception noted above, are timely as of the date of the amended complaint, the Court need not address defendants' argument that plaintiffs are estopped from arguing that

the original complaint placed defendants on notice of those claims.

### 2. Improper Amendment

Defendants argue that plaintiffs' purportedly new claim for failure to follow the

Plan's requirements for amendment is time-barred because PSCo announced the

changes in retirees' prescription drug copayments in October 2011 and plaintiffs did not

assert this claim until July 2015.  Docket No. 83 at 8; Docket No. 101 at 5.  Plaintiffs

state that they do not allege any such "improper amendment" claim.  Rather, plaintiffs

argue, they allege only that the copayment increases (which constitute benefit

reductions) announced in 2011 and MPD's more restrictive application as disclosed in

2013 violate both the Plan as established by the 2009-2014 CBA and Plan documents,

which had not been amended since 2008.  Docket No. 97 at 7-9.  Both plaintiffs' and

defendants' positions on this matter are unclear.  From their reply, defendants appear

to assert that two paragraphs in the amended complaint — paragraphs 48[8] and 52 —

constitute a new claim for failure to follow the Plan's formal amendment procedures,

both in implementing MPD and in announcing the October 2011 benefit changes.  *See*

Docket No. 101 at 5.

---

[8]Defendants cite paragraph 47, Docket No. 101 at 5, but since that paragraph says nothing about amendments, the Court presumes defendants intended to reference paragraph 48, which alleges:

> MPD was not set forth or referenced in any plan amendment, plan document, Summary Plan Description, Summary of Material Modification, or any other instrument under which the Plan is established or operated, nor was any amendment of the M/M Plan made or authorized under the terms of the 2002 or subsequent 2008 Wrap Plan document to establish MPD.

Docket No. 73 at 12, ¶ 48.

The Court finds that plaintiffs' amended complaint alleges no new "improper amendment" claim that is subject to dismissal on statute of limitations grounds. Plaintiffs' claim regarding MPD is that, to the extent that it increases Plan participants' payment for "dispense as written" prescriptions, MPD violates the CBA and is not authorized under the Plan. *See* Docket No. 97 at 7; Docket No. 73 at 13, ¶¶ 53-54. Although plaintiffs allege that MPD was never incorporated in any Plan document, *id.* at 12, ¶ 48, this allegation is merely support for the claim that MPD constitutes a failure to provide benefits promised under the Plan. Regarding the October 2011 changes, plaintiffs' allegations in the original and amended complaints are substantially identical; in each complaint, plaintiffs allege that, in October 2011, PSCo "announced changes in the prescription drug provisions of the M/M Plan only, having made no corresponding change in the active employees' Health Care Plan." *Compare* Docket No. 73 at 13, ¶ 52; *with* Docket No. 1 at 12, ¶ 47. Thus, paragraphs 48 and 52 of the amended complaint do not constitute a new, independent claim under ERISA for failure to follow the proper procedures to amend the Plan.

### C.  Waiver

Defendants argue that IBEW waived any CBA claims related to MPD by withdrawing the Vandeventer Grievance. Docket No. 83 at 13. Defendants rely on Article 22 of the CBA, titled "Arbitration," which states that "[f]ailure by either party to conform to the time limits specified in the Article, unless otherwise mutually agreed to, shall stop all further consideration of the arbitration, and settlement shall be in favor of the other party." Docket No. 83 at 13; Docket No. 73-35 at 5, Art. 22, § 1. Plaintiffs

provide only a perfunctory response that their recitation of the facts of this case "answer

defendants' brief argument that the settlement of the 2010 Vandeventer grievance

waives the new contract claim related to MPD."  Docket No. 97 at 6 n.6.

Defendants, in relying on the time limits set forth in Article 22, appear to argue

that IBEW's withdrawal of the Vandeventer Grievance constituted "[f]ailure . . . to

conform to the time limits" specified for arbitration proceedings, Docket No. 73-35 at 5,

Art. 22, § 1.[9]  Defendants' argument is unpersuasive.  Defendants do not identify what

time limits were violated.  Nor is any violation of a time limit self evident from Article 22

or from paragraph 50 of the amended complaint.  Thus, on the present record, there

are insufficient facts for the Court to address defendants' argument.[10]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants Public Service Company of Colorado and Xcel

Energy Inc. Employee Welfare Benefit Plan's Partial Motion to Dismiss Plaintiffs' First

---

[9]The time limits specified in the CBA for arbitration proceedings are as follows: in the event of a dispute "which shall not be settled through the grievance procedure," PSCo and IBEW are each to select an arbitrator within 48 hours after IBEW has notified PSCo in writing of its desire to submit the matter to arbitration.  Docket No. 73-35 at 5, Art. 22, § 1.  IBEW and PSCo then jointly select a third arbitrator.  *Id.*  The arbitration hearing must be scheduled within 90 calendar days from IBEW's notification submitting the matter to arbitration.  *Id.*

[10]Although the parties do not raise this issue, it is also unclear from the Tenth Circuit's prior ruling in this case whether the arbitration provision applies to this dispute at all.  In affirming the Court's order denying plaintiffs' motion for judgment on the pleadings, the Tenth Circuit stated: "we don't think the Agreement's arbitration provision is susceptible to an interpretation that covers disputes over retired workers' healthcare benefits."  *IBEW*, 773 F.3d at 1108.

Amended Class Action Complaint [Docket No. 83] is **GRANTED** in part and **DENIED** in part as reflected in this Order.  It is further

  **ORDERED** that plaintiffs' fourth claim for relief is dismissed to the extent that plaintiffs allege MPD violates the Plan even if it does not increase retirees' payments for "dispense as written" prescriptions.

  DATED March 31, 2016.

        BY THE COURT:


         s/Philip A. Brimmer      
        PHILIP A. BRIMMER
        United States District Judge